2013 OK CR 18

Sharina TATE, Petitioner,

v.

The STATE of Oklahoma, Respondent.

No. C–2012–690.

Court of Criminal Appeals of Oklahoma.

Oct. 28, 2013.

Robert Gray, Attorney at Law, Ada, OK, counsel for defendant at Plea in CRF–2006–394 at trial.

Andreas T. Pitsiri, Appellate Defense Counsel, Norman, OK, counsel for petitioner on appeal.

Larry Balcerak, Attorney at Law, Pauls Valley, OK, counsel for defendant at plea/motion to revoke/motion to terminate/motion to withdraw plea at trial.

Gordon Melson, Seminole, OK, counsel for defendant at application for mental health court at trial.

James E. Tillison, Matt Welde, Assistant District Attorneys, Ada, OK, counsel for the state at trial.

E. Scott Pruitt, Attorney General of Oklahoma, Jennifer B. Welch, Assistant Attorney General, Oklahoma City, OK, counsel for the state on appeal.

### OPINION DENYING CERTIORARI AND AFFIRMING TERMINATION FROM MENTAL HEALTH COURT

LUMPKIN, Judge.

¶ 1 Petitioner, Sharina Tate, was charged by Information in the District Court of Pontotoc County, Case No. CRF–2006–394, with Unlawful Possession of Controlled Drug (Methamphetamine) (Count I) (63 O.S.Supp. 2004 § 2–402), and Unlawfully Bringing Contraband into County Jail (Count II) (57 O.S. 2001, § 21). On November 13, 2007, Petitioner entered a negotiated guilty plea before the Honorable Thomas S. Landrith, District Judge. Petitioner's plea was accepted and the District Court sentenced Petitioner to imprisonment for ten (10) years with all but the first three years suspended in Count I and imprisonment for three (3) years in Count II. The District Court ordered the sentences to run concurrently.[1] After completing her term of imprisonment, Petitioner

---

1. The District Court also ordered Petitioner to pay court costs, a $165.00 victim's compensation assessment, and a $275.00 OIDS fee.

was released to the suspended portion of her sentence on Count I.

¶2 On January 19, 2010, the State filed a Motion to Revoke Suspended Sentence alleging Petitioner had violated the rules and conditions of probation when she used illegal drugs, failed to participate or complete drug treatment, failed to notify her probation officer of her new address, and was charged with Obstructing an Officer in District Court of Murray County Case No. CF–2009–120. On May 27, 2010, the State filed an Amended Motion to Revoke Suspended Sentence adding the additional allegation that Petitioner committed the offenses of Obtaining Merchandise by False Pretense and Knowingly Concealing Stolen Property.

¶3 On May 28, 2010, Petitioner was charged by Information in the District Court of Pontotoc County, Case No. CF–2010–211, with Obtaining Merchandise by False Pretense § Count 1) (21 O.S.2001, § 1541.2), and Knowingly Concealing Stolen Property (Count 2) (21 O.S.2001, § 1713). On June 22, 2010, Petitioner entered a blind plea of no contest to both counts before the Honorable Thomas S. Landrith, District Judge. At the same hearing, Petitioner stipulated to the allegations contained in the State's Amended Motion to Revoke in District Court of Pontotoc County Case No. CRF–2006–394. The District Court found that Petitioner had violated the rules and conditions ol her suspended sentence, accepted her guilty plea, and set the matter for sentencing, pending receipt of the pre-sentence investigation report.

¶4 Following receipt of the pre-sentence investigation report, Petitioner retained counsel, made application to be accepted to Mental Health Court, and negotiated an agreement as to sentencing.[2] On November 22, 2010, the District Court determined that Petitioner was a proper candidate for Mental Health Court and approved her application. The District Court delayed revoking Petitioner's suspended sentence in CRF–2006–394 and delayed sentencing Petitioner in CF–

2010–211, pending her completion of or termination from Mental Health Court. Petitioner's sentencing agreement provided that the court would revoke five (5) years of her previously suspended sentence in CRF–2006–394 and sentence her to imprisonment for ten (10) years in CF–2010–211, each to run concurrent with each other, if she was terminated from the Mental Health Court Program.

¶5 On June 4, 2012, the State filed an Application to Terminate Mental Health Court Participation and Sentence Defendant; alleging that Petitioner engaged in social contact with a known felon; provided false information to Mental Health Court team members to hide said contact; absconded from the Mental Health Court Program from February through May 2012; and that Petitioner had previously been sanctioned for earlier violations but that those sanctions had failed to correct her actions. On July 18, 2012, the District Court sustained the State's Application and terminated Petitioner's participation in Mental Health Court. In CRF–2006–394, the District Court revoked five (5) years of Petitioner's suspended sentence. In CF–2010–211, the District Court sentenced Petitioner to imprisonment for ten (10) years in Count 1, and five (5) years in Count 2 and ordered the sentences to run concurrently with each other and with the sentence in CFR–2006–394.[3]

¶6 On July 24, 2012, Petitioner filed Defendant's Motion to Withdraw Plea of No Contest seeking to withdraw her plea in both cases. At a hearing held on July 26, 2012, the District Court denied Petitioner's motion. Petitioner filed her Notice of Intent to Appeal seeking to appeal both the denial of her motion to withdraw plea and the decision terminating her from the Mental Health Court Program. We now address Petitioner's appeal of the final order terminating her from the Mental Health Court and the denial of her motion to withdraw plea.

¶7 Petitioner raises the following propositions of error in support of her appeal.

2. Petitioner had been represented by appointed counsel at the previous hearings.

3. The District Court also ordered Petitioner to pay court costs, a $165.00 victim's compensation assessment, a $275.00 OIDS fee, a jail fee, and restitution in the amount of $874.50.

I. The trial court abused its discretion by prematurely terminating Ms. Tate's participation in Mental Health Court. Therefore, this Court should order that Appellant be readmitted to the Mental Health Court.

II. The trial court's failure to adequately state on the record the reasons for Ms. Tate's termination from Mental Health Court warrants relief from this Court.

III. Ms. Tate was denied her right to effective assistance of counsel because trial counsel offered no reasonable ground in support of Appellant's motion to withdraw her pleas.

¶ 8 After thorough consideration of the propositions and the entire record before us on appeal including the original record, transcripts, and briefs of the parties, we affirm the trial court's rulings.

## I. Procedural Status of Appeal

██ ¶ 9 We first note that Petitioner's Petition For Writ of Certiorari in District Court of Pontotoc County, Case No. CRF–2006–394 is not properly before the Court and must be dismissed. In *Burnham v. State*, 2002 OK CR 6, 43 P.3d 387, this Court recognized that appeal through a petition for writ of *certiorari* was not available to a criminal defendant following the revocation of a suspended sentence. *Id.*, 2002 OK CR 6, ¶¶ 6–8, 43 P.3d at 389–90. "Review of an order revoking a suspended sentence is governed by the same procedure as perfection of a regular misdemeanor or felony appeal." *Rule 1.2(D)(4), Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2013). A revocation appeal is therefore brought by Petition in Error. *Burnham*, 2002 OK CR 6, ¶ 8, 43 P.3d at 390.

¶ 10 As Petitioner's imprisonment in CRF–2006–394 consisted of the revocation of five (5) years of her previously suspended sentence, a *certiorari* appeal was not available to Petitioner. Therefore, Petitioner's *Certiorari* Appeal in CRF–2006–394 should be dismissed.

██ ¶ 11 However, we find that Petitioner's challenge to her termination from Men-

tal Health Court in Case No. CRF–2006–394 should proceed. In *Burnham,* this Court was unable to construe the petition for writ of certiorari as a petition in error because the petitioner failed to file a notice of intent to appeal within ten (10) days following the order of revocation. *Burnham,* 2002 OK CR 6, ¶ 9, 43 P.3d at 390; *See* Rule 2.1(B), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2013) (setting forth requirement of filing written notice of intent to appeal and designation of record within ten (10) days of from the date of order appealed). In the present case, Petitioner timely filed her Notice of Intent to Appeal within ten days of the revocation order and attached the requisite Designation of Record. Within the Notice of Intent to Appeal, Petitioner indicated her intent to appeal the District Court's order terminating her from Mental Health Court in both CRF–2006–390 and CF–2010–211. Petitioner then timely filed a "Petition–in–Error and Petition for Writ of *Certiorari.*" Thus, Petitioner preserved appellate review of her challenge to her termination from Mental Health Court.

¶ 12 In District Court of Pontotoc County, Case No. CF–2010–211, Petitioner preserved appellate review o1 both her challenge to her termination from Mental Health Court and her Petition For Writ of *Certiorari.* She properly filed the requisite pleadings for these two separate types of appeal.

██ ¶ 13 Petitioner preserved appellate review of her challenge to her termination from Mental Health Court in Case number CF–2010–211 by following Rule 1.2(D), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2013). She filed her Notice of Intent to Appeal–Designation of Record with the trial court clerk within ten (10) days of the imposition of Judgment and Sentence. *See Id.; See also Hagar v. State,* 1999 OK CR 35, ¶ 12, 990 P.2d 894, 898. She also timely filed her Petition in Error within ninety (90) days of the date that Judgment and Sentence was imposed. Rule 3.1, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2013) ("The filing of the petition in error is jurisdictional and failure to timely file constitutes waiver of right to appeal."). However, these pleadings

only preserved review of the validity of her challenge to her termination from Mental Health Court. *See* Rules 1.2(D), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2013). The scope of such review is limited to the validity of the termination order. *Id.*

¶ 14 In contrast, Petitioner preserved appellate review of her plea of no contest in Case No. CF–2010–211, by following Section IV of the Rules of this Court. She filed her Motion to Withdraw Plea of No Contest in the trial court clerk's office within ten (10) days from the date of the pronouncement of the Judgment and Sentence setting forth in detail the grounds for the withdrawal of the plea and requesting an evidentiary hearing in the trial court. Rule 4.2, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2013). She timely filed her Notice of Intent to Appeal–Designation of Record in the trial court within ten (10) days from the date her Motion to Withdraw Plea of No Contest was denied. *Id.* She then timely filed her Petition for Writ of Certiorari in accordance with Rule 4.3, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2013).

¶ 15 The scope of review afforded on petition for writ of *certiorari* is distinct from the review of a termination order. When we review the validity of a plea, we are concerned only with whether or not the plea was entered voluntarily and intelligently. *Hagar,* 1999 OK CR 35, ¶ 4, 990 P.2d at 896, *citing Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). "The decision to allow the withdrawal of a plea is within the sound discretion of the trial court and we will not interfere unless we find an abuse of discretion." *Carpenter v. State,* 1996 OK CR 56, ¶ 40, 929 P.2d 988, 998.

## II. Claims of Error

¶ 16 In Proposition One, Petitioner seeks to have this Court recognize the right to appeal from termination from a mental health court program. She contends that the District Court abused its discretion when it terminated her from the Pontotoc County Mental Health Court in lieu of disciplinary sanctions.

¶ 17 We address for the first time, 22 O.S.2011, § 472, the "Anna McBride Act." The Anna McBride Act authorizes any district or municipal court within the State to establish "a mental health court pilot program." 22 O.S.2011, § 472(B). A mental health court is a diversionary program. It is "a judicial process that utilizes specially trained court personnel to expedite the case and explore alternatives to incarceration for offenders charged with criminal offenses other than a crime listed in paragraph 2 of Section 571 of Title 57 of the Oklahoma Statutes who have a mental illness or a developmental disability, or a co-occurring mental illness and substance abuse disorder." 22 O.S.2011, § 472(D). The right to appeal the decision to terminate or revoke an offender from a mental health court program is not specifically set forth in the statute.

¶ 18 Citing this Court's opinion in *Hagar v. State,* 1999 OK CR 35, 990 P.2d 894, Petitioner seeks to have this Court recognize that she has the right to appeal from the District Court's termination of her participation in the Mental Health Court Program. In *Hagar,* we recognized that a defendant has a right to appeal to this Court from a decision to revoke or terminate his or her participation in a Drug Court program. *Hagar,* 1999 OK CR 35, ¶ 12, 990 P.2d at 898.

¶ 19 Pursuant to Rule 4.3(E), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2013), we directed the State to file a response in this matter. In that response, the State acknowledges that this Court should recognize a right to appeal from a termination from mental health court pursuant to *Hagar.* We agree and extend the rule announced in *Hagar* to the revocation or termination of an offender's participation in a mental health court program.

¶ 20 Diversionary programs, such as drug court and mental health court, are comparable to the situation wherein a defendant's sentence is deferred pending the successful completion of certain terms of probation. *See Hagar,* 1999 OK CR 35, ¶¶ 9–11,

990 P.2d at 898.[4] The interests and procedures involved in the deferral of sentencing and diversionary programs are similar. *Id.,* 1999 OK CR 35, ¶ 12, 990 P.2d at 898. A defendant is entitled to due process when the State seeks to terminate his or her participation in a diversionary program. *Alexander v. State,* 2002 OK CR 23, ¶ 8, 48 P.3d 110, 112–13. This Court has long recognized the right to appeal the acceleration of a deferred sentence. *Hagar,* 1999 OK CR 35, ¶ 12, 990 P.2d at 898 (*citing Kern v. State,* 1974 OK CR 54, ¶ 9, 521 P.2d 412, 415 (opinion on rehearing)); *see also Gonseth v. State,* 1994 OK CR 9, ¶¶ 6–7, 871 P.2d 51, 53–54 (discussing right to appeal "final order" of deferment of judgment and sentence under 22 O.S.1991, § 1051). As an offender's termination from a mental health court program involves a loss of liberty analogous to that suffered by both a defendant whose deferred sentence is accelerated and a drug court participant who is terminated from the drug court program, we find that a defendant has a right to appeal to this Court from a decision to revoke or terminate his or her participation in a mental health court program.

 ¶ 21 The procedure to be followed in an appeal of the termination of participation in a mental health court is the same as that for appeal of termination from drug court. This procedure is set out in Rule 1.2(D), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2013). It is also the same procedure as appeal from acceleration of a deferred sentence. *See Hagar,* 1999 OK CR 35, ¶ 12, 990 P.2d at 898. Similarly, the procedures used to revoke or terminate a defendant from a mental health court program are the same as revocation or termination from a drug court program. In order to meet the requirements of due process, notice shall be given to the offender and the other parties participating in the mental health court case at least three (3) days before the hearing may be held. *Id.,* 1999 OK CR 35, ¶ 13, 990 P.2d at 898.

The written notice must set forth the reasons for termination with such clarity that the defense is able to determine what reason is being submitted as grounds for termination, enabling preparation of a defense to the allegation. *Id.,* 1999 OK CR 35, ¶ 14, 990 P.2d at 898–99. A violation of the terms of the performance contract or rules of the mental health court program need only be showed by a "preponderance of the evidence." *Id.,* 1999 OK CR 35, ¶ 11, 990 P.2d at 898. The trial court must state on the record the reasons for the termination or otherwise sufficiently apprise the defendant ol the reasons for termination. *Black v. Romano,* 471 U.S. 606, 613–14, 105 S.Ct. 2254, 2259, 85 L.Ed.2d 636 (1985); *Hagar,* 1999 OK CR 35, ¶ 15, 990 P.2d at 899; *McCaskey v. State,* 1989 OK CR 63, ¶ 6, 781 P.2d 836, 837. The decision to revoke or terminate from mental health court lies within the sound discretion of the trial court. *Hagar,* 1999 OK CR 35, ¶ 11, 990 P.2d at 898.

 ¶ 22 Turning to the present case, Petitioner contends that the District Court should have imposed available disciplinary sanctions against her instead of terminating her from the Mental Health Court. She argues that the District Court failed to properly recognize relapses and restarts in the program as required under the Oklahoma Drug Court Act.

¶ 23 This Court has determined that a drug court judge is to recognize relapses and restarts in the program which are considered part of the rehabilitation process, and shall accomplish monitoring and offender accountability by ordering progressively increasing sanctions (or providing incentives) rather than removing an offender from the program when relapse occurs, except when the offender's conduct requires revocation from the program. *Alexander,* 2002 OK CR 23, ¶ 11, 48 P.3d at 113. This constraint is statutorily mandated by 22 O.S.2011, § 471.7(E) ("The drug court judge shall recognize relapses and restarts in the program which are considered

---

4. I continue to caution the judges ol this State that diversionary programs like mental health court and the drug court act run afoul of the separation of powers doctrine provided in our constitution and jeopardize the protection of judicial immunity afforded to judges in performing their judicial duties. *See Alexander v. State,* 2002 OK CR 23, ¶ 5, 48 P.3d 110, 116 (Lumpkin, P.J., specially concurring).

to be part of the rehabilitation and recovery process."). *Hagar*, 1999 OK CR 35, ¶ 15, 990 P.2d at 899. However, we find that this constraint is not applicable to mental health court programs.

¶ 24 Petitioner argues that this constraint is applicable to mental health court proceedings because the Anna McBride Act is contained within the Oklahoma Drug Court Act. Although we have recognized that the Anna McBride Act is a diversionary program similar to the Oklahoma Drug Court Act, the Anna McBride Act is clearly not part of the Oklahoma Drug Court Act. The Oklahoma Drug Court Act was enacted by the Legislature in 1997. By the very language of the Act it comprises Sections 1 through 12 of Chapter 359 to the 1997 Session laws. 22 O.S.Supp.1997, § 471 ("Sections 1 through 12 of this act shall be known and may be cited as the 'Oklahoma Drug Court Act.' "); 1997 Okla. Sess. Laws Ch. 359, §§ 1–12. These 12 sections were enacted as 22 O.S.Supp.1997, §§ 471 through 471.11. *Id.* The twelfth and final section of the Act was 22 O.S.Supp.1997, § 471.11.1997 Okla. Sess. Laws Ch. 359, § 12. The Act has not been expanded beyond those 12 sections.

¶ 25 In contrast, the Anna McBride Act was enacted by the Legislature in 2002. It was enacted at 22 O.S.Supp.2002, § 472. 2002 Okla. Sess. Laws Ch. 285, § 1. It comprises one "section." *Id.*; 22 O.S.2011, § 472. It is a separately named Act and falls outside the sections enacted as part of the Oklahoma Drug Court Act. *Id.*; 22 O.S.2011, § 472. Accordingly, § 471.7(E), is not applicable to mental health court programs.

¶ 26 The Legislature has not enacted a similar provision within the Anna McBride Act. 22 O.S.2011, § 472. There is not any provision within the Anna McBride Act requiring the mental health court to recognize relapses and restarts as part of the program. Certainly, a mental health court may recognize relapses and restarts as part of the mental health court program. Such opportunities are likely essential to attract participants and may be necessary to assist participants in reforming certain behaviors. However, individuals with a mental illness or a developmental disability, or a co-occurring mental illness and substance abuse disorder, are distinct from individuals with substance abuse problems. Although interpreting the Anna McBride Act as requiring recognition of relapses and restarts in the program might produce a reasonable result, we construe the statute by its plain and ordinary language and refuse to address a matter the Legislature chose not to address. *State v. Young*, 1999 OK CR 14, ¶ 27, 989 P.2d 949, 955. Accordingly, we find that there is not any statutory requirement that the mental health court recognize relapses and restarts in the program. The Legislature has not set forth the procedures to be used in admitting an offender to the mental health court program, the duration of participation in the program, how monitoring of treatment progress is accomplished, or the consequences of both successful and unsuccessful completion of a mental health court program. 22 O.S. 2011, § 472. Although the Anna McBride Act was intended to establish "pilot programs", the law has now been in existence for more than ten years and the Legislature should adopt provisions to provide further guidance to the municipal and district courts within the State.

¶ 27 We further find that there is no constitutional requirement that the judge recognize relapses and restarts in the program. This limitation is not among the minimum requirements of due process necessary for the revocation or termination of probation. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973) (finding due process requirements for revocation of parole applicable to termination of probation proceedings); *Morrissey v. Brewer*, 408 U.S. 471, 488–89, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) (setting forth minimum requirements of due process for the revocation of parole). As the constraint is neither contained in the Anna McBride Act nor constitutionally required, we find that this constraint is not applicable to mental health court programs.

¶ 28 Therefore, in the present case, we review the District Court's decision to revoke or terminate Petitioner from Mental Health Court for an abuse of discretion. The State must establish that the defendant violated

the terms of the performance contract or rules of the mental health court program by a preponderance of the evidence. *See Hagar*, 1999 OK CR 35, ¶ 11, 990 P.2d at 898. An abuse of discretion has been defined as a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented. *Marshall v. State*, 2010 OK CR 8, ¶ 24, 232 P.3d 467, 474; *Sanchez v. State*, 2009 OK CR 31, ¶ 58, 223 P.3d 980, 1001; *State v. Love*, 1998 OK CR 32, ¶ 2, 960 P.2d 368, 369. An abuse of discretion has also been described as any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue. *Neloms v. State*, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170.

¶ 29 Reviewing the record in the present case, we find that the District Court's termination o1 Petitioner's participation in the Mental Health Court Program was not clearly against the logic and effect of the facts presented. Members of the Pontotoc County Mental Health Court testified that Petitioner engaged in social contact with a known felon; deceived the Mental Health Court Team members concerning this contact; and despite being on house arrest, absconded from the Mental Health Court Program from January 23, 2012 through May 17, 2012. Petitioner testified at the hearing and admitted that she had violated the program rules. She admitted that, despite the fact that she was under house arrest at the time, she absconded from the program for the second time on January 23, 2012. She admitted contact with a known convicted felon. Accordingly, we find that the District Court did not abuse its discretion in terminating Petitioner from the Mental Health Court Program. Proposition One is denied.

¶ 30 In Proposition Two, Petitioner contends that plain error occurred when the trial court failed to adequately state on the record the reasons for the termination. Petitioner did not challenge the trial court's failure to explicitly state on the record the reason for her termination from the Mental Health Court Program. As such, she has waived appellate review of this issue for all but plain error. *Simpson v. State*, 1994 OK CR 40, ¶¶ 2, 23–24, 876 P.2d 690, 693, 698–99.

¶ 31 This Court reviews for plain error under the standard set forth in *Simpson*. In *Hogan v. State*, 2006 OK CR 19, 139 P.3d 907, we detailed the test for plain error.

> To be entitled to relief under the plain error doctrine, [an appellant] must prove: 1) the existence of an actual error (i.e., deviation from a legal rule); 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. *See Simpson v. State*, 1994 OK CR 40, ¶¶ 3, 11, 23, 876 P.2d 690, 694, 695, 698; 20 O.S.2001, § 3001.1. If these elements are met, this Court will correct plain error only if the error "seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings" or otherwise represents a "miscarriage of justice." *Simpson*, 1994 OK CR 40, ¶ 30, 876 P.2d at 701 (*citing United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993)); 20 O.S.2001, § 3001.1.

*Id.*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

¶ 32 Reviewing Petitioner's claim of error, we find that she has not shown the existence of an actual error. The United States Supreme Court in *Morrissey v. Brewer*, set forth the minimum requirements of due process in parole revocation proceedings. *Morrissey*, 408 U.S. at 488–89, 92 S.Ct. at 2604. The Supreme Court determined that this included a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. *Id.* However, the Supreme Court emphasized it was not creating an inflexible structure for parole revocation procedures. *Id.*, 408 U.S. at 489–90, 92 S.Ct. at 2604.

¶ 33 In *Gagnon v. Scarpelli*, the Supreme Court recognized that the same due process guarantees applied to probation revocation proceedings. *Gagnon*, 411 U.S. at 782, 93 S.Ct. at 1759–60. Based upon the holdings of *Morrissey* and *Gagnon*, this Court has required that a defendant be "sufficiently apprised of the grounds upon which his sentence is revoked." *Nelson v. State*, 1985 OK CR 122, ¶¶ 7–8, 706 P.2d 549, 551. In *Mack v. State*, 1981 OK CR 160, 637 P.2d 1262, this

Court determined that despite the trial court's failure to make written findings of fact the defendant had been sufficiently apprised as to the grounds upon which his suspended sentence was revoked. *Id.*, 1981 OK CR 160, ¶ 4, 637 P.2d at 1264. This Court found that the trial court's written notation taken in conjunction with the trial court's statement in the transcript of the proceedings sufficiently apprised the defendant as to the grounds upon which his suspended sentence was revoked. *Id.* This Court has also recognized that due process may be met by the trial court stating on the record the reasons for the revocation. *McCaskey,* 1989 OK CR 63, ¶ 6, 781 P.2d at 837.

¶ 34 This Court's interpretation of the flexibility that may be used to meet this due process guarantee is consistent with the Supreme Court's subsequent pronouncement on the subject. In *Black v. Romano,* the Supreme Court determined that the memorandum prepared by the sentencing court and the transcript of the hearing provided the necessary written statement explaining the evidence relied upon and the reason for the decision to revoke probation. *Black,* 471 U.S. at 616, 105 S.Ct. at 2260. The Supreme Court made this determination even though the judge did not explain on the record his consideration and rejection of alternative to incarceration. *Id.*

■ ¶ 35 We find that this due process guarantee is also applicable to mental health court termination proceedings. Therefore, a mental health court participant must be sufficiently apprised as to the evidence and the grounds upon which his or her participation in the mental health court is terminated. *See Hagar,* 1999 OK CR 35, ¶ 15, 990 P.2d at 899 (applying this same rule to drug court termination proceedings).

■ ¶ 36 We apply this analysis to the present case. Although the District Court should have made a more specific statement on the record as to the reasons for termination, we find that Petitioner was sufficiently apprised of the evidence and the grounds upon which her participation in the mental court was terminated. The District Court's statements during the hearing held on the State's application coupled with the written Judgment and Sentence document and the transcript of the proceedings sufficiently apprised Petitioner of the evidence and the grounds upon which her participation in the mental health court was terminated.

¶ 37 As Petitioner was sufficiently apprised as to the reasons for her termination, she has not established the existence of an actual error. Accordingly, we find that plain error did not occur. Proposition Two is denied.

■ ¶ 38 In Proposition Three, Petitioner contends that defense counsel rendered ineffective assistance in conjunction with her Motion to Withdraw Plea of No Contest.

An analysis of an ineffective assistance of counsel claim begins with the presumption that trial counsel was competent to provide the guiding hand that the accused needed, and therefore the burden is on the accused to demonstrate both a deficient performance and resulting prejudice. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See also Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *Strickland* sets forth the two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel. First, the defendant must show that counsel's performance was deficient, and second, he must show the deficient performance prejudiced the defense. Unless the defendant makes both showings, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.,* at 687, 104 S.Ct. at 2064. Appellant must demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy. *Id.,* at 688–89, 104 S.Ct. at 2065. The burden rests with Appellant to show that there is a reasonable probability that, but for any unprofessional errors by counsel, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confi-

dence in the outcome. *Id.,* 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d at 700.

*Bland v. State,* 2000 OK CR 11, ¶ 112, 4 P.3d 702, 730–31.

¶ 39 In the present case, Petitioner argues that the claims that defense counsel raised in her Motion to Withdraw Plea of No Contest were not legitimate reasons to withdraw her plea. She contends that counsel should have offered legitimate grounds for the withdrawal of her pleas.

■ ¶ 40 When evaluating the validity of a guilty plea, we are concerned only with whether or not the plea was entered voluntarily and intelligently. *Hagar,* 1999 OK CR 35, ¶ 4, 990 P.2d at 896, *citing Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Therefore, a criminal defendant raises legitimate grounds for the withdrawal of his or her plea where the motion to withdraw plea alleges that the plea was not voluntarily or intelligently entered.

■ ¶ 41 It appears that the majority of claims that defense counsel raised in the Motion to Withdraw Plea of No Contest were alleged errors affecting the validity of Petitioner's termination from Mental Health Court.[5] However, Petitioner fails to point to any specific claim that counsel could have or should have raised in the motion. She does not present any evidence that her plea was not voluntarily and intelligently entered. Therefore, we are unable to assess Petitioner's claim. *Stemple v. State,* 2000 OK CR 4, ¶ 61, 994 P.2d 61, 73 (finding that claim of ineffective assistance of was not reviewable

where appellant had failed to show what counsel should have presented). Petitioner's failure to delineate the legitimate grounds for the withdrawal of her plea is fatal to her claim of error. *Trice v. State,* 1996 OK CR 10, ¶ 21, 912 P.2d 349, 355. Her unsubstantiated claim of ineffective assistance of counsel is not entitled to reliel. *Berget v. State,* 1995 OK CR 66, ¶ 30, 907 P.2d 1078, 1086 (holding unsubstantiated assertions of ineffective assistance of counsel are insufficient to sustain a claim of error).

¶ 42 In failing to identify a specific claim that defense counsel should have raised, Petitioner has failed to show that defense counsel's performance was deficient. *Le v. State,* 1998 OK CR 1, ¶ 11, 953 P.2d 52, 57 (finding conclusory allegations of ineffective assistance standing alone will not support a claim of deficient performance). We further find that Petitioner has failed to establish that there is a reasonable probability that the outcome of the hearing would have been different but for counsel's unprofessional errors. Accordingly, we find that Petitioner has not demonstrated that defense rendered ineffective assistance. Proposition Three is denied.

## DECISION

¶ 43 Accordingly, Petitioner's *Certiorari* Appeal in CRF–2006–394 is *DISMISSED.* The order of the district court denying Petitioner's Motion to Withdraw Guilty plea in CF–2010–211 is *AFFIRMED.* The order

5. In her Motion to Withdraw Plea filed with the District Court, Petitioner raised the following claims:
 a. The Defendant's sentence for Count II in CF–10–211 exceeds the statutory maximum punishment established by the legislature.
 b. The State of Oklahoma alleged and utilized prior violations, which the Defendant was previously sanctioned for by the Mental Health Court judge, during the termination proceeding.
 c. The State of Oklahoma has failed to abide by the terms and conditions of the plea agreement and Mental Health Court Performance Contract;
 d. The treatment program utilized by the Pontotoc County Mental Health Court Program failed to institute relapse prevention and evaluation components;

 e. The Trial Court failed to recognize the Defendant's relapses, restarts and failed to provide incentives before removing the Defendant from the Pontotoc County Mental Health Court Program when an alleged relapse occurred;
 f. The Trial Court failed to give specific findings as to why disciplinary sanctions were allegedly insufficient to gain compliance by the Defendant; and
 g. There was no evidence that the Defendant was provided with a written treatment plan similar to the requirements in Title 22 O.S. § 471.6(D)(3) detailing the time period and requirements of the active treatment portion for the Defendant while she was in the Pontotoc County Mental Health Court Program.

terminating Petitioner's participation in Mental Health Court is **AFFIRMED.** Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2013), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LEWIS, P.J. and A. JOHNSON, J.: concur in part/dissent in part.

SMITH, V.P.J. and C. JOHNSON, J.: concur.

LEWIS, P.J., concurs in part/dissents in part.

¶ 1 I concur in the Court's decision to deny relief on Petitioner's claims. However, I must respectfully dissent from the Court's conclusion that the statutory provisions for mental health courts are substantially different than those previously established by the Legislature in the Oklahoma Drug Court Act. The Anna McBride Act, codified at section 472 of Title 22, is a much more abbreviated enactment, its principal purposes being the authorization of mental health courts and providing certain statutory exclusions from participation. The mental health court authorized by the Anna McBride Act is defined as a "judicial process" that utilizes "specially trained court personnel" to "explore alternatives to incarceration for offenders ... who have a mental illness or a developmental disability, or a *co-occurring mental illness and substance abuse disorder.*" § 472(D) (emphasis added).

¶ 2 This last clause demonstrates an important point. The co-existence of mental illness and substance abuse is pervasive.[1] Drug and mental health courts frequently will be confronted with offenders experiencing virtually identical problems with compliance in their respective programs. Indeed, Petitioner in this case clearly struggled with drug abuse as part of her non-compliance. In "exploring alternatives to incarceration,"

drug and mental health court judges and personnel will undoubtedly apply training and knowledge to non-compliance in much the same way. § 471.7(E).

¶ 3 The Legislature need not re-enact every provision of the Oklahoma Drug Court Act in section 472 for this Court to acknowledge that procedures for supervision and termination in drug and mental health courts should be essentially the same. Given the extensive procedural blueprint provided for drug courts, the Legislature's decade of silence in the matter of procedures for mental health courts is perfectly understandable. We have the necessary procedures and directions already. Subject to the Legislature's ultimate control, we should interpret existing statutes consistently with a view to realizing their stated purposes. For this reason, relapses and restarts should be recognized in both kinds of programs.

¶ 4 Further, to hold that one mental health court may consider relapses and restarts in supervision and termination decisions, while another may refuse to, opens to the door to inconsistent applications of the law. While courts should have significant discretion is making these determinations, this Court should ensure that the legal standards guiding their decisions are consistent and fair. The earlier-enacted provisions of the Oklahoma Drug Court Act provide strong evidence of the Legislature's preferred mechanisms for the operation of therapeutic courts in Oklahoma. We should apply these provisions where reasonably possible, until we are told otherwise. I am authorized to state that Judge A. Johnson joins me in this opinion concurring in part and dissenting in part.

1. R. Kessler, R. Crum, L. Warner, C. Nelson, J. Schulenberg, J. Anthony, Lifetime Co-occurrence of DSM–III–R Alcohol Abuse and Dependence With Other Psychiatric Disorders in the National Comorbidity Survey, *Arch. Gen. Psychiatry.* 1997;54(4):313–321 (National Comorbidity Survey data indicate that alcohol abuse and dependence are often associated with other lifetime *DSM–III–R* disorders); J. Petrila and A. Redlich, "Mental Illness and the Courts: Some Reflections on Judges as Innovators" 43 Court Review 164 (2007) http://aja.ncsc.dni.us/courtrv/cr43–4/CR43–4Patrila.pdf ("When substance abuse and other mental illness diagnoses are considered, the prevalence of mental disorder among arrestees is over 70%.").